**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**ALEXANDRIA DIVISION**

| | |
|---|---|
| **PEDRO RAMOS** | **CIVIL ACTION NO. 1:26-2670** |
| | **SECTION P** |
| **VS.** | **JUDGE JERRY EDWARDS, JR.** |
| **WARDEN CENTRAL LOUISIANA ICE PROCESSING CENTER, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Petitioner Pedro Ramos,[1] a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions for a writ of habeas corpus under 28 U.S.C. § 2241.[2] Respondents oppose the petition. [doc. # 16]. For reasons below, the Court should grant the petition.

## Background

Petitioner is a citizen of Cuba. He is married to a United States citizen, and he is the father of a United States citizen. [doc. # 1, p. 1].

On October 15, 2019, an immigration judge ordered Petitioner removed.

"Because 'there was not a significant likelihood of removal in the reasonably foreseeable future,' on October 22, 2019, the Petitioner was released on an Order of Supervision." [doc. # 16, p. 1].

---

[1] Petitioner's "A Number" is 074-053-986.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

ICE re-detained Petitioner on January 12, 2026. [doc. #s 1, p. 1; 16, p. 1].

Petitioner filed this proceeding on approximately July 23, 2026. He claims that ICE has detained him for a prolonged period and that his removal is not significantly likely in the reasonably foreseeable future. [doc. # 1, p. 1]. He states that he has "been detained for nearly 10 months, and the Government has failed to remove him even though he has had a final order of removal for nearly 7 years." [doc. # 17, p. 2]. He maintains that following his removal order in 2019, he has not received any "indication that the removal is reasonably foreseeable." *Id.* at 4.

Respondents opposed the petition on September 17, 2026. [doc. # 16]. Petitioner filed a reply on October 1, 2026. [doc. # 17].

## Law and Analysis

Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." Under Section 1231(a)(6), "An alien ordered removed who is inadmissible[,] . . . removable[,] . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." In *Zadvydas*, 533 U.S. at 682, the Supreme Court construed Section 1231(a)(6) "to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."

"[T]he Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' 533 U.S., at 699, 121 S.Ct. 2491 and it further held that six months is a presumptively reasonable period, *id.,* at 701, 121 S.Ct. 2491. After that, the Court concluded, if the alien 'provides good reason to

believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing [with evidence] or release the alien." *Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018) (quoting *Zadvydas*, 533 U.S. at 699).[3] If removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700.

"[R]eview must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700.

Here, Petitioner has been in custody beyond the presumptively reasonable six-month period. To date, he has been detained approximately 282 days (or 9 months, 9 days) following his final order of removal.

In addition, Petitioner meets his initial burden of providing good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. He states that he has "been detained for nearly 10 months, and the Government has failed to remove him even though he has had a final order of removal for nearly 7 years." He maintains that following his removal order in 2019, he has not received any "indication that the removal is reasonably foreseeable." Moreover, the Government concedes it was unable to remove him in 2019.

The undersigned also recognizes, as Petitioner points out, that Respondents possess the "documentary evidence" regarding any efforts to remove him. [doc. # 17, p. 4]. Petitioner need

[3] "The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

not prove a negative to meet his initial burden. It suffices from his length of detention and showing/argument that, from his perspective—without the benefit of information he might not possess before receiving the Government's response to his petition (such as communications within the agency or between the agency and another country)—he has good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future.[4]

Respondents attach the declaration of Assistant Field Office Director Matthew W. Reaves, who declares in part:

> 4. On or about October 16, 2019, the Petitioner's file was received by the docket officer, and he was nominated for removal.
>
> 5. On or about October 17, 2019, the docket officer noted that there was no significant likelihood of removal in the reasonably foreseeable future (SLRRFF) and forwarded the Supervisor Detention Deportation Officer (SDDO) pending the Order of Supervision (OSUP) decision. On or about the same day, the SDDO determined the Petitioner was a Cuban Final Order within the removal period with no third country ties, SLRRFF and should be released on OSUP. The Petitioner's A-file was routed to the Assistant Field Office Director (AFOD) for review.
>
> 6. On or about October 18, 2019, ERO Headquarters advised that there was no SLRRFF at this time as the Cuban officials had no timeframe to respond under this category. Due to the lack of SLRRFF to Cuba, and the absence of ties to an alternative country, ICE ERO is unable to enforce the removal order at that time. Continued detention was not in the best interest. ERO Headquarters agreed with the Stay of Removal and the OSUP release. The recommendation was routed to the Deputy Field Office Director (DFOD) for review.

---

[4] *See generally Suarez-Rosabal v. Warden, Fla. Soft Side S. Det. Ctr.*, No. 2:26-CV-1376-KCD-DNF, 2026 WL 1413161, at *2 (M.D. Fla. May 20, 2026) ("To shift the statutory burden, he need not prove a negative with absolute certainty. He just needs to provide a 'good reason to believe' that his removal is nowhere on the horizon. . . . He does just that by highlighting a telling silence in the record: the total absence of any travel documents for his removal."); *Egharevba v. Benzel, et al., Respondents.*, No. 26-CV-10628, 2026 WL 2655018, at *5 (D.N.J. Sept. 9, 2026) ("*Zadvydas* does not require a noncitizen to prove a negative, i.e., that no conceivable avenue to removal exists. Furthermore, only the Government possesses the information most relevant to the foreseeability of removal, such as its communications with potential receiving countries and ability to arrange transportation.").

7. On or about October 22, 2019, the Petitioner was released on OSUP due to no SLRRFF.

8. On or about June 20, 2025, the docket officer emailed a Deportation and Detention Officer with International Operations Division – Cuba (IOD – Cuba) regarding possible removal to Cuba.

9. On or about July 1, 2025, the IOD-Cuba responded to the docket officer's inquiry stating the case by case nominated was previously submitted to the Government of Cuba on May 15, 2025. The request remained pending and there was no SLRRFF as of the date of noting.

10. On or about January 12, 2026, the Petitioner was encountered by ICE ERO after reporting to his scheduled Order of Supervision appointment. He was then taken into custody without incident.

11. On or about January 23, 2026, the docket officer prepped the third country removal packet with a tentative plan for Mexican nomination.

12. On or about January 28, 2026, the Petitioner was a failure to comply (FTC) for third country removal to Mexico at the San Ysidro port of entry. Mexico has denied repatriation.

13. On or about February 8, 2026, the docket officer noted the Petitioner was to be re-nominated to another port of entry other than the Harlingen, TX port of entry for third country removal attempts. The Petitioner was served the I-229 and FTC paperwork.

14. On or about February 13, 2026, the Petitioner was served with an I-229a and refused to sign. On the same date, the Petitioner was served with the 229b for failing to comply on January 28, 2026, while at the San Ysidro port of entry.

15. On or about February 18, 2026, the docket officer noted the Post Order Custody Review clock should have stopped at day February 13, 2026. Petitioner was to be served the I-229a on March 14, 2026.

16. On or about March 2, 2026, the docket officer noted the parole request packet was received. The deportation officer recommended denial and notified the family member of his custody determination.

17. On or about March 5, 2026, the Petitioner was transferred for a third country removal. The Petitioner failed to comply at the border.

18. On or about Marh 6, 2026, the docket officer noted the Petitioner arrived at the San Diego Area of Responsibility (AOR) on March 5, 2026, for third country removal to Mexico. On or about March 6, 2026, the Petitioner was a failure to

> comply for third country removal to Mexico at the San Ysidro port of entry. Mexico has denied repatriation.
>
> 19. On or about April 2, 2026, the Petitioner was nominated for a removal flight to Mexico third country removal to Mexico.
>
> 20. On or about May 25, 2026, the Petitioner was nominated for a removal flight to Mexico via a third country removal.
>
> 21. On or about July 11, 2026, a Failure to Comply letter was reviewed and forwarded to the AFOD. On or about the same day, the Failure to Comply letter was returned and forwarded for service on the Petitioner.

[doc. # 16-1].

Respondents argue that "Petitioner's failure to comply with removal efforts has effectively tolled the removal period." [doc. # 16, p. 3]. In *Balogun v. I.N.S.*, 9 F.3d 347, 351 (5th Cir. 1993), the Fifth Circuit held "that if it is shown that petitioner by his conduct has intentionally prevented the INS from effecting his deportation, the six-month period should be equitably tolled until petitioner begins to cooperate with the INS in effecting his deportation or his obstruction no longer prevents the INS from bringing that about."

The undersigned agrees that Petitioner tolled the sixth-month period from January-March 2026, when he failed to comply with removal to Mexico. However, the undersigned finds that tolling ended in April 2026 because Mexico denied repatriation, yet the Government continued attempting to remove Petitioner to Mexico. [doc. # 16-1, p. 2]. Continued attempts to remove Petitioner to a country which has denied repatriation is the fault of the Government, not Petitioner. Respondents have provided no evidence that Mexico has reversed or will reverse its denial decision. If the goal is removal, then trying to remove Petitioner to a country which has denied repatriation is illogical and cannot at that point be held against Petitioner.

Thus, from April 2026—when tolling ended—to present, Petitioner has been detained in excess of six months following his final order of removal.

That (i) DHS continues to seek removal to Mexico after Mexico denied repatriation, (ii) is waiting on a response to its nomination of Petitioner "for a removal flight to Mexico[,]" and (iii) presents no other indication of progress or an expected timeframe for removal does not establish that removal is significantly likely to occur in the reasonably foreseeable future.[5]

Respondents provide no evidence—or reasons to conclude—that removal is forthcoming.[6] They do not, for example, provide any evidence that they have made progress in obtaining a travel document from any other country, that they have been communicating with any other country about Petitioner's removal, that any other country has recently accepted others similarly situated to Petitioner, or that any country is willing to accept Petitioner.[7]

---

[5] While not dispositive, the undersigned finds it persuasive that the Government has been unable to remove Petitioner since 2019.

[6] *See Gabremicheal v. Gonzales*, 2007 WL 624602, at *3 (W.D. La. Jan. 31, 2007) ("There is simply no indication that any effort is being made to obtain a travel document for Gabremicheal or that a travel document is likely to issue in the reasonably foreseeable future."); *Azad v. Interim Dist. Director, New York,* 2009 WL 2569132 (S.D.N.Y., August 19, 2009) (finding that ICE failed to rebut a showing by petitioner where ICE's contacts with the local Consulate of Bangladesh resulted only in statements that the consulate was awaiting confirmation of information); *Mohamed v. Ashcroft,* 2002 WL 32620339 (W.D. Wash., April 15, 2002) (granting petitioner habeas corpus relief where the government failed to offer any "specific information regarding how or when [it] expect[ed] to obtain the necessary documentation or cooperation from the Ethiopian government."); *Islam v. Kane*, 2011 WL 4374226, at *1 (D. Ariz. Aug. 30, 2011), *report and recommendation adopted,* 2011 WL 4374205 (D. Ariz. Sept. 20, 2011) ("Other than stating that the travel document request is 'pending,' Respondent provides no details about the status of Petitioner's travel document, such as whether DHS has received any assurances that travel documents are forthcoming, or whether the Bangladesh Consulate is even willing to issue a travel document for Petitioner."); *Shefqet v. Ashcroft*, 2003 WL 1964290, at *5 (N.D. Ill. Apr. 28, 2003) (finding that the government failed to meet its burden in part because there was no evidence that Guyana had responded to the request for travel documents); *Butt v. Holder*, 2009 WL 1035354, at *5 (S.D. Ala. March 19, 2009) (holding that the petitioner met his initial burden when he was held in ICE custody for more than ten months after the issuance of his removal order with no indication from the Pakistani Embassy that travel documents would be issued); *Palma v. Gillis,* 2020 WL 4880158, at *2 (S.D. Miss. July 7, 2020).

[7] The undersigned lists these non-exhaustive examples for general illustrative purposes only.

Respondents cannot rest on bald assertions that removal is foreseeable without providing sufficient supporting evidence. "A theoretical possibility of eventually being removed does not satisfy the Government's burden once the removal period has expired and the petitioner establishes good reason to believe [that] his removal is not significantly likely in the reasonably foreseeable future." *Kane v. Mukasey*, 2008 WL 1139137 at *5 (S.D. Tex. 2008). As one Court stated, "if [ICE] has no idea of when it might reasonably expect [Petitioner] to be repatriated, this Court certainly cannot conclude that his removal is likely to occur—or even that it might occur—in the reasonably foreseeable future." *Singh v. Whitaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y. 2019).

Petitioner need not show that removal is impossible. *Zadvydas,* 533 U.S. at 702. Although there may be some possibility that Petitioner could be removed, an unsubstantiated possibility does not satisfy Respondents' burden.

Accordingly, Petitioner's detention is unreasonable; the Court should grant habeas corpus.[8]

## Conclusion

For the reasons above, **IT IS RECOMMENDED** that Petitioner Pedro Ramos's petition for habeas corpus be **GRANTED**: Respondents, and the Warden of Central Louisiana ICE Processing Center, shall (A) immediately release Petitioner from custody without bond, under reasonable conditions of supervision if necessary and (B) notify Petitioner's counsel of the exact location and time of his release no less than two hours before his release.

[8] The undersigned finds no need to address any claim or request for relief not addressed herein.

**IT IS FURTHER RECOMMENDED** that Respondents shall, within **24 hours** after Petitioner's release, file a status report confirming his release.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 20th day of October, 2026.

Kayla D. McClusky
United States Magistrate Judge